UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| In Re: | ) | CASE NO.  08-10632-BKC-PGH |
| | ) | |
| First NLC Financial Services, LLC | ) | CHAPTER  7 |
| | ) | |
| Debtors. | ) | Adversary Complaint No.: 08-01130-PGH |
| | ) | |
| Angelia Johnson and Fran Kramer, on | ) | |
| behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| First NLC Financial Services, LLC, d/b/a | ) | |
| First NLC, d/b/a The Lending Center, | ) | |
| d/b/a Florida Mortgage Network, NLC, | ) | |
| Inc., First NLC, Inc. and Friedman, | ) | |
| Billings & Ramsey Group, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO (I) APPROVE THE SETTLEMENT AGREEMENT PURSUANT TO
RULE 9019 BY AND AMONG DEBORAH C. MENOTTE AS THE CHAPTER 7
TRUSTEE, ANGELIA JOHNSON AND FRAN KRAMER AND ALL OTHER
SETTLEMENT CLASS MEMBERS, (II) CERTIFY A CLASS OF WARN ACT
CLAIMANTS FOR SETTLEMENT PURPOSES ONLY, APPOINT SETTLEMENT
CLASS COUNSEL, CLASS REPRESENTATIVES, AND PRELIMINARILY
APPROVE THE SETTLEMENT PURSUANT TO BANKRUPTCY RULE 7023,
(III) APPROVE THE FORM AND MANNER OF NOTICE TO SETTLEMENT
CLASS MEMBERS OF THE CLASS CERTIFICATION AND SETTLEMENT, (IV)
SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL
OF THE SETTLEMENT AGREEMENT, AND (V) FINALLY APPROVE
THE SETTLEMENT AGREEMENT PURUANT TO BANKRUPTCY
RULE 7023 AFTER THE FAIRNESS HEARING**

Deborah C. Menotte, in her capacity as the chapter 7 trustee (the "Chapter 7 Trustee") for

the estates of First NLC Financial Services, LLC, et al. ("First NLC" or the "Debtors"), hereby

files this motion (the "Motion") to (I) approve the settlement agreement  by and among Chapter 7 Trustee, Angelia Johnson and Fran Kramer and all other putative class members, a copy of which is attached hereto as Exhibit "A" (the "Agreement"), (II) certify a class of WARN Act claimants for settlement purposes only ("Settlement Class Members"), appoint Outten & Golden LLP as lead settlement class counsel and Brett M. Amron, P.A. as counsel to the settlement class (collectively, "Settlement Class Counsel"), appoint Angelia Johnson and Fran Kramer as class representatives ("Class Representatives"), and preliminarily approve the Agreement pursuant to Bankruptcy Rule 7023, (III) approve the form and manner of notice to Settlement Class Members of the class certification and Agreement attached hereto as Exhibit B ("Class Notice"), (IV) schedule a fairness hearing to consider final approval of the settlement ("Fairness Hearing"), and (V) finally approve the Agreement pursuant to Bankruptcy Rule 7023 after the Fairness Hearing.  In support of this Motion, the Chapter 7 Trustee respectfully represents to the Court as follows:

## I.      JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court has authority to grant the relief requested herein pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 9019(a) and 7023, and Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

## II.      BACKGROUND

2.      Defendant Friedman, Billings, Ramsey Group, Inc. ("FBR," and together with First NLC, the "Defendants") is a Delaware Corporation with its principal place of business located at 1001 19th Street North, Arlington Virginia.  FBR conducted business in this district.

First NLC, which is a wholly owned subsidiary of FBR, owned and operated facilities in the mortgage lending industry. First NLC maintained and operated its corporate headquarters at 4680 Conference Way South, Boca Raton, Florida (the "Boca Raton Facility") and allegedly maintained and operated additional facilities (as that term is defined in the WARN Act) across the country (collectively the "Facilities").

3.      Plaintiffs allege that during the relevant period, Defendants operated as a "Single Employer" with respect to the Plaintiffs and other similarly situated former employees, as defined in the WARN Act. On or about November 30, 2007 and January 11, 2008, Debtors terminated approximately 200 similarly situated employees at the Facilities.

4.      On January 18, 2008, Debtors filed a voluntary petition (the "Petition Date") with this Court for relief under Chapter 11 of Title 7 of the United States Bankruptcy Code.

5.      Prior to the Petition Date, Debtors had operations in several states, with their corporate headquarters and main operations center in Boca Raton, Florida, and with another operations center in Anaheim, California.

6.      On November 30, 2007, Debtors terminated the employment of 73 employees at the Anaheim Facility and 14 employees at the Boca Raton Facility. *See* First NLC Motion to Dismiss, ¶2 (D.E. # 50). Debtors paid each of these employees through January 4, 2008. *Id.* On January 11, 2008, Debtors terminated the employment of 21 of the remaining 27 employees at the Anaheim Facility and 60 additional employees at the Boca Raton Facility and provided notices on that day that referred to the WARN Act. *Id.*, ¶3. Debtors paid each of these employees through January 11, 2008. *Id.*

7.      On February 7, 2008, Plaintiffs filed a putative Class Action Adversary Proceeding Complaint (D.E. #1), which was amended on April 14, 2008 (D.E. # 46) (the

"Complaint"), allegedly on behalf of themselves and other similarly situated former employees of the Debtors who were allegedly terminated without receiving 60 days advance written notice in violation of the WARN Act and the California Labor Code § 1400 et seq.

8.      On February 11, 2008, Debtors scheduled the claims of former employees, including the balance of the prepetition claims held by the 73 terminated employees at the Anaheim Facility and the 14 terminated employees at the Boca Raton Facility.  *See* Main Case, D.E. No. 147.  These claims were scheduled as fourth and fifth priority claims under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, up to the $10,950 statutory cap, with the balance, if any, scheduled as general unsecured claims.  *Id.*  On March 21, 2008 and April 24, 2008, Debtors filed amended schedules reflecting, *inter alia*, additional wage and benefit claims entitled to fourth and fifth priority status, respectively, and general unsecured claims for the amounts, if any, over the $10,950.00 cap, as to former employees at the Boca Raton facility who were given notices that referred to the WARN Act on January 11, 2008. (Main Case, D.E. Nos. 298 and 373).

9.      On May 12, 2008, the chapter 11 cases were converted to chapter 7 and on May 12, 2008, Deborah C. Menotte was appointed as the chapter 7 trustee of the Debtors' estates. (Main Case, D.E. No. 449).

## III.      INITIATION OF WARN ACT LITIGATION AND DESCRIPTION OF CLAIMS

10.     Plaintiffs and each person they seek to represent, allege they were discharged without cause on their part on or about November 30, 2007 or January 11, 2008, or within 30 days of those dates, or as the reasonable foreseeable consequence of the mass layoffs or plant closings ordered by First NLC on November 30, 2007 and on January 11, 2008 making them "affected employees" within the meaning of 29 U.S.C. 2101(a)(5).  *See* Complaint ¶ 28.

11.     Plaintiffs claim that on or about November 30, 2007 and January 11, 2008, Debtors terminated the Plaintiff's employment as part of a mass layoff and/or a plant closing as defined by 29 U.S.C. § 2101(a)(2),(3) for which they were entitled to receive 60 days written notice under the WARN Act.

12.     Plaintiffs claim Debtors never gave Plaintiffs the statutorily required 60 days notice of the mass layoffs or termination in violation of the WARN Act.  Debtors dispute Plaintiffs' claim.

13.     On November 30, 2007, Debtors terminated the employment of 73 employees at the Anaheim Facility and 14 employees at the Boca Raton Facility.  At the time of termination, the Debtors' contend (and Plaintiffs dispute) that each of the employees was given notice required by the WARN Act and the Labor Code as to the employees at the Anaheim Facility. After this termination, 27 employees who were designated as the transition or wind-down team for the Anaheim Facility remained while 92 employees remained at the Boca Raton Facility. Debtors paid each of these employees through January 4, 2008.

14.     At or about the time the Plaintiffs were discharged, on or about November 30, 2007 and January 11, 2008, Plaintiffs claim Debtors discharged approximately 200 other employees at the Facilities (the "Other Similarly Situated Former Employees").

15.     Plaintiffs claim that Debtors failed to pay Plaintiffs and the Other Similarly Situated Former Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 calendar days following their respective terminations and failed to make the 401(k) contributions and provide them with health insurance coverage and other employee benefits under ERISA for 60 calendar days from and after the dates of their respective terminations.

16.    On January 11, 2008, Debtors terminated the employment of 21 of the remaining 27 employees at the Anaheim Facility and 60 additional employees at the Boca Raton Facility. The Debtors contend that the 21 employees at the Anaheim Facility had been given notice required by the WARN Act and Labor Code on November 30, 2007, along with the 73 employees whose employment had been terminated on that date.  Plaintiffs dispute that the notice provided to the employees complied with the requirements of the WARN Act or the Labor Code.  Debtors contend that the 60 employees whose employment was terminated on January 11, 2008 at the Boca Raton Facility were given notice on that date that referred to the WARN Act. After this termination, 33 employees remained at the Boca Raton Facility and 6 employees at the Anaheim Facility.  Debtors paid each of these employees through January 11, 2008.  The remaining 6 employees were paid through January 31, 2008.

17.    The Complaint seeks damages in the amount of 60 days wages and benefits and administrative priority for such alleged damages.

18.    On April 28, 2008, Plaintiffs filed their Motion for Class Certification and Other Relief ("Motion for Class Certification") (D.E. # 12).

## IV.    SETTLEMENT NEGOTIATIONS

19.    The Debtors have provided documents and other materials relevant to the WARN claims and defenses to Settlement Class Counsel and have engaged in a series of arms length settlement negotiations spanning the course of more than a year.

## V.    ESSENTIAL TERMS OF THE PROPOSED SETTLEMENT

20.    In order to avoid the significant cost, delay and risk of litigation and appeals, the Chapter 7 Trustee and the Released Parties (as defined in the Agreement) have entered into the Agreement, which provides among other things:

A.    <u>Settlement Class</u>.

The term "Settlement Class" shall be used to mean the group of individuals for whom WARN claims are being settled, specifically: former employees of the Debtors who worked at or reported to the Debtors' Anaheim or Boca Raton Facilities and were terminated without cause on or about  November 30, 2007 or January 11, 2008, within 30 days of those dates and thereafter, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) and/or the California Labor Code § 1400 et. seq. (the "<u>Settlement Class Members</u>").  The Settlement Class members are identified in Exhibit A to the Agreement.

B.    <u>Settlement Amounts</u>.

In full and complete satisfaction of all claims (as that term is defined under 11 U.S.C. § 105(5)) asserted in the Complaint and all alleged claims arising from or related to the WARN Acts, the Settlement Class shall receive the following:  Upon the Effective Date, the Settlement Class shall have an allowed, unsecured priority claim in the  amount of $400,000 (the "<u>Settlement Amount</u>"), from which the Representative Payments shall be paid and reimbursement of Lead Settlement Class Counsel's fees and expenses as approved by the Bankruptcy Court shall be made upon distribution of same by the Trustee from the Debtors' estates.  The Trustee agrees that, as part of the motion to approve the Agreement, she will seek approval from the Bankruptcy Court for authority to make an interim distribution to pay the Settlement Amount on the Effective Date of this Agreement provided, that at such time, the Debtors' estates have sufficient funds on hand to pay, in full, all outstanding (billed and unbilled) chapter 7 and 11 administrative fees and expenses.

C.    <u>Settlement Class Counsel's Fees</u>.

Settlement Class Counsel may seek an order of the Bankruptcy Court allowing it compensation for reimbursement of its reasonable expenses, and payment of its attorneys' fees of not more than one-third (33 1/3%) of the Settlement Amount (collectively, "<u>Settlement Class Counsel Fees</u>"), payable <u>exclusively</u> from the Settlement Amount.  Upon order of the Bankruptcy Court approving such Settlement Class Counsel Fees, the Trustee shall pay Settlement Class Counsel Fees as directed by Settlement Class Counsel contemporaneously with any distribution to the Settlement Class.  The Trustee agrees that she shall not object to any fee application filed before the Bankruptcy Court by Settlement Class Counsel that is consistent with the provisions of the Agreement.  All costs and expenses associated with providing notice to the Settlement Class and other costs associated with representation of the Plaintiffs and the Settlement Class shall be borne by Settlement Class Counsel.

D.    <u>Settlement Class Representative Payment</u>.

Plaintiffs, as Settlement Class Representatives, shall each be entitled to a one-time payment of $5,000, payable from the Settlement Amount (the "<u>Representative</u>

Payments") and payable upon the distribution of payments to holders of allowed, unsecured priority claims against the Debtors.    The Trustee shall distribute the Representative Payments and pay any local, state or federal tax obligation of the Debtors related to the payment of the Representative Payments and withhold all appropriate local, state and federal tax obligations, garnishments and similar withholding obligations of Plaintiffs.    The Trustee shall not be liable for any personal tax obligation of Plaintiffs arising from or related to the distribution or receipt of the Representative Payment.

E.    Pro Rata Shares of Settlement Class Members.

Distributions to individual Settlement Class Members shall be made on a pro rata basis, based upon each individual Settlement Class Member's average monthly gross wages or gross salary and all benefits under any employee benefit plan during the sixty (60) day period preceding November 30, 2007 or January 11, 2008, as applicable (the "Back Pay"), *reduced by* gross wages or gross salary and all benefits under any employee benefit plan received by each Settlement Class Member from the Debtors on account of work performed on behalf of the Debtors after November 30, 2007 or January 11, 2008, as applicable (the "Post Termination Period").    The term "pro rata" as used herein shall mean the quotient of each individual Settlement Class Member's Back Pay less Post Termination Pay over the aggregate Back Pay for all Settlement Class Members (such amount being each Settlement Class Member's "Pro Rata Share").    The formula for determining a Settlement Class Member's Pro Rata Share shall be as follows:

$$\textbf{Pro Rata Share} = \frac{\textbf{(Settlement Class Member Back Pay) - (Settlement Class Member Post Termination Pay)}}{\Sigma\textbf{(All Settlement Class Members' Back Pay)}^{1}}$$

Settlement Class Counsel shall provide the Trustee with its calculation of each Settlement Class Member's Pro Rata Share and the basis for such calculation within ninety (90) days after the Effective Date.    The Trustee shall review and confirm such calculation prior to any distribution.    Any disputes between the Trustee and Settlement Class Counsel regarding such pro rata distribution shall be resolved by the Bankruptcy Court.

C.    Individual Settlement Class Member Distributions.

Each individual Settlement Class Member shall be entitled to receive such Settlement Class Member's Pro Rata Share of distributions from the Settlement Amount, net of Settlement Class Counsel Fees and the Representative Payments, to the extent not already paid (a "Distribution").    The formula for each individual Distribution shall be as follows:

$$\textbf{Distribution = [(Pro Rata Share) x (Settlement Proceeds)]}^{2}$$

---

[1] By way of example only, assuming a Settlement Class Member whose Back Pay totals $1,000, who received $100 in Post Termination Pay, and aggregate Back Pay for all Settlement Class Members totals $100,000, such Settlement Class Member's Pro Rata Share would be [($1,000 - $100)/$100,000], or 0.90%.

By way of example only, if a Settlement Class Member's Pro Rata Share is 0.90% and the Settlement Proceeds, net of Settlement Class Counsel Fees and the Representative Payment, to the extent not already paid total $50,000, the Settlement Class Member would be entitled to 0.90% x $50,000, or $450.

F.      Release of Defendants and Related Parties.

Except for the rights and obligations arising out of, provided for, or reserved in the Agreement, the Plaintiffs for and on behalf of themselves and their respective predecessors, successor, assigns, affiliates and subsidiaries, do hereby, and all other Settlement Class Members who endorse and receive value for their settlement checks (collectively, the "Releasing Parties") do thereby, fully and forever release and discharge First NLC Financial Services, Inc., FBR, the Defendants and their current and former shareholders and affiliated entities and their respective officers, directors, shareholders, agents, employees, partners, members, accountants, attorneys, representatives and other agents and all of their respective predecessors, successors and assigns, and the Joint Committee of Creditors Holding Unsecured Claims and all former or current members and attorneys (each a "Released Party" and together the "Released Parties"), of and from any and all claims and rights of any kind that arise from the allegations set forth in the Complaint or similar factual allegations, under the WARN Acts (as defined in the Agreement), demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected or disclosed, that the Releasing Parties may have as of this date against the Released Parties arising out of the factual allegations raised in the Complaint or similar factual allegations, under the WARN Acts, including, those asserted by any individual Settlement Class Member and the Adversary Proceeding; *provided, however*, that claims filed by former employees that do not arise from or relate to the WARN Acts, including, but not limited to, any claims arising from or related to pre-petition wages, salaries or benefits earned by former employees shall not be released hereby. The Debtors expressly reserves the right to object to, offset or oppose any and all other claims, obligations or causes of action, of any type, except those claims allowed pursuant to this Agreement.

G.      Opt-Out

In the event that more than ten potential Settlement Class Members timely opt out of the Settlement, the Trustee has the right, but not the obligation, to void the Settlement Agreement.

## VI.    **RELIEF REQUESTED**

---

[2] By way of example only, if a Settlement Class Member's Pro Rata Share is 0.90% and the Settlement Proceeds, net of Settlement Class Counsel Fees and the Representative Payment, to the extent not already paid total $50,000, the Settlement Class Member would be entitled to 0.90% x $50,000, or $450.

21.     By this Motion, the Chapter 7 Trustee requests that the Court enter orders: (i) authorizing the Parties to enter into the Agreement (ii) certifying the Class for settlement purposes only, appointing Settlement Class Counsel and Class Representatives and preliminarily approving the Agreement; (iii) approving the form and manner of the Class Notice; (iv) scheduling a Fairness Hearing to consider final approval of the Agreement \; and (v) approving the Agreement on a final basis.

## VII.    BASIS FOR RELIEF REQUESTED

### A.    The Court Should Approve the Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Because the Settlement is in the Best Interests of the Debtors' Estates, Creditors and Other Parties in Interest

22.     Generally, courts encourage settlements and favor compromises.  *See In re Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996); *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).  Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, Fed. R. Bankr. P. 105(a).  The standards by which courts evaluate a proposed compromise and settlement are well established.   In bankruptcy, a court should approve a proposed compromise and settlement when it is fair and equitable and in the best interests of the debtor's estates and its creditors.   *See In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del 1998); *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *In re Texaco*, 84 B.R. 893, 901-02 (Bankr. S.D.N.Y. 1988).[3]  The court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

---

[3]     *See also In re Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989); *LaSalle Nat'l Bank v. Holland (In re American Reserve Corp.)*, 841 F.2d 149, 161 (7th Cir. 1987)(a court is not required to resolve the issues of fact and law compromised by a proposed settlement); *Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Services, Inc.)*, 762 F.2d 185, 187-89 (2d Cir. 1985).

23.     The settlement need not be the best that the estate could have achieved, but rather, the settlement should be approved if it falls "within the reasonable range of litigation possibilities."    *In re Penn Central Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979); *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983).  In determining whether a settlement is within the range of reasonableness, the Court should consider four principal factors: (1) the probability of success in the litigation; (2) difficulties to be encountered in collection; (3) the complexity of the litigation and related expense and inconvenience; and (4) the interests of the creditors.  *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir.), cert. denied, 498 U.S. 959 (1990); *Marvel*, 222 B.R. at 249; *see also In re Pennsylvania Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993); *In re Grant Broadcasting of Philadelphia, Inc*., 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987).

24.     It is not necessary for the Court to conduct a "mini trial" of the facts or the merits underlying the dispute.  *See Grant Broad.*, 71 B.R. at 396; *see also In re A&C Properties*, 784 F.2d 1377, 1384 (9th Cir.), *cert, denied*, 479 U.S. 854 (1986).  Instead, the Court need only consider those facts that are necessary and pertinent to enable it to evaluate the settlement and to make an informed and independent decision concerning the settlement.  *See Penn Central*, 596 F.2d at 1114.  The Chapter 7 Trustee respectfully submits that the Agreement favorably falls well within the *Justice Oaks* criteria and thus, should be approved by the Court.

## <u>Probability of Success on the Merits</u>

25.     The Chapter 7 Trustee continues to believe that her defenses to the Plaintiffs' claims and to the class certification are supported both in fact and in law.  The Chapter 7 Trustee maintains that the Complaint fails to state a claim upon which relief can be granted with respect

to the Plaintiffs' assertion that their claims are entitled to administrative expense status since it is undisputed that the services which form the basis for these claims were rendered prepetition, and that no services were rendered by Plaintiffs post-petition.  Additionally, the Chapter 7 Trustee continues to assert her position that the Plaintiffs' allegations supporting class certification are deficient for multiple reasons.

26.     However, the Chapter 7 Trustee recognizes that the Plaintiffs and the Settlement Class Members continue to believe that their claims have merit and would be prepared to go forward with the litigation of those claims if necessary.

27.     Although both the Chapter 7 Trustee and the Plaintiffs strongly believe that they would prevail, they recognize all litigation is inherently risky and as with any lawsuit, the ultimate outcome of the claims is uncertain.  The Agreement resolves all disputes between the Chapter 7 Trustee, the Plaintiffs and all the Settlement Class Members within the range of reasonable litigation possibilities.

### Complexity, Expense and Inconvenience of Litigation and Attendant Delay

28.     The results of a trial are uncertain and the litigation is complex.  This adversary proceeding involves numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts.  These issues, *inter alia*, include (i) whether the Debtors' WARN Notice provided adequate notice to the Settlement Class Members under the WARN Act, (ii) whether the Debtors were entitled to give fewer than 60 days notice because of unforeseeable business circumstances that caused the Debtors to fail, (iii) whether the Debtors were entitled to give fewer than 60 days notice because, at the time notice would otherwise have been required, they were seeking new capital they reasonably believed, if obtained, would have obviated or substantially postponed the alleged plant closing or mass layoffs; (iv) whether the

Debtors have other defenses to the application of the WARN Act; (v) whether the employment losses allegedly suffered by the aggrieved employees were caused by the Debtors' failure to obtain capital or business; (vi) whether the Debtors gave "as much notice as practicable;" (vii) whether the Debtors are entitled to a defense of "good faith;" (viii) the computation of the amount of damages; (ix) whether the Debtors are entitled to setoffs against damages for sums paid pre-petition and post-petition to employees; (x) whether attorneys' fees are to be awarded to the Settlement Class Members if they prevail and whether such fees are entitled to administrative priority; (xi) whether the alleged damages are entitled to administrative priority under section 503(b)(1)(A) or wage or benefit priority under section 507(a)(4) or (5) respectively;[4] and (xii) whether FBR and First NLC constitute a "single employer" under the provisions of the WARN Act such that FBR is liable for some or all of the alleged damages.

29.    Indisputably, some of the allegations in the Complaint and the issues to be tried involve complex legal and factual issues.  Continued litigation would be costly and time-consuming and expose the Debtors' estates to significant litigation risks.  Such litigation will inevitably delay and diminish any distribution that would be granted to the Plaintiffs and Settlement Class Members were they to succeed in a trial, since it would entail enormous professional fees.  Moreover, the continuing litigation will distract the parties from efforts to monetize the estates' remaining assets and to administer claims against the estates.

## Paramount Interest of Creditors

30.    Approval of the Agreement is clearly in the best interests of creditors of the Debtors' estates.  First, approval of the Agreement eliminates the need for individual claim

---

[4] The Delaware Bankruptcy Court has recently held that WARN damages resulting from prepetition employment termination are not entitled to administrative priority, but rather are treated as priority wage claims up the cap of $10,950 and general unsecured claims thereafter.  *Henderson v. Powermate Holding Corp.* (In re Powermate

litigation as to each claimant that filed a WARN Act claim. Second, a condition of the Agreement is that Plaintiffs and Settlement Class Counsel will not assert any objections to the Chapter 7 Trustee's settlement with FBR (and certain related parties), thereby facilitating the approval of that settlement. Third, the approval of the Agreement resolves any issues with respect to litigation over liability of FBR, contribution and indemnity claims arising therefrom. Finally, the approval of the Agreement advances the claimants' interests in that they can receive money for their claims in an expedited fashion.

31.     Accordingly, in light of each of the *Justice Oaks* factors, the Agreement should be approved.

**B.      The Court Should Certify the Class for Settlement Purposes Only, Appoint Settlement Class Counsel, and Preliminarily Approve the Agreement Pursuant to Rule 23 of the Federal Rules of Civil Procedure.[5]**

32.     Class certification requires that each of the four prerequisites for class certification set forth in Federal Rule of Civil Procedure 23, namely, Rule 23(a)(1), (2), (3) and (4), be satisfied and that, in addition, at least one of the subparts of Rule 23(b) -- here 23(b)(3) -- be satisfied. As shown below, the prerequisites for class certification are clearly present in this action.

**The Proposed Class Meets the Requirements of Rule 23(a).**

33.     F.R. Civ. P. 23(a) provides as follows:

**Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the

---

Holding Corp.) 394 B.R. 765 (Bankr. D. Del. 2008). That decision is on appeal and there is no 11th Circuit authority on the issue.

[5] The positions taken in this section of the Motion are those of Settlement Class Counsel only. The Debtors take no position on these matters other than to support approval of the Agreement and class certifications for purposes of settlement only. In the event the Agreement does not become effective, the Debtors reserve all of their rights to contest class certification.

class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

### (1)    The Numerosity Requirement is Satisfied.

34.    Federal Rule of Civil Procedure 23(a)(1), requires that the class sought to be certified be "so numerous that joinder of all members is impracticable." This prerequisite, however, does not require that joinder be impossible. *Coggin v. Sears, Roebuck and Company*, 155 B.R. 934, 937 (E.D.N.C.1993); *See also, 1 Newberg on Class Actions*, § 3:4 at 230 (4th Ed. 2002) (It is important to remember that "[i]mpracticable does not mean impossible."). No specific number is needed to maintain a class action. *Cypress v. Newport News General & Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir.1967). Rather, an "application of the rule is to be considered in light of the particular circumstances of the case." *Cypress*, 375 F.2d at 653. Classes consisting of forty or more persons "should have a reasonable chance of success on the basis of number alone." *1 Newberg*, *supra* § 3:5 at 248. Indeed, a class of approximately 200 claimants is clearly sufficient to satisfy Rule 23(a)(1). *See, e.g., In re Kaiser Group Int'l*, 278 B.R. 58, 64 (Bankr. D. Del. 2002) (discussing the law of "numerosity" and finding that a class of approximately 47 members was sufficiently numerous to justify certification). As was stated by another Bankruptcy Court:

> Generally, the Third Circuit has stated that if the class representative establishes that the potential number of class members exceeds 40, the numerosity requirement is satisfied. e.g. *Stewart v. Abraham*, 275 F.3d 220, 227 (3rd Cir. 2001).
>
> I would agree, at least with respect to the numerosity requirement, that "the WARN Act seems particularly amenable to class litigation" given that its applicability is limited to companies which employ more than 100 employees and which lay off employees in groups of 50 or more. *See Finnan v. L.F. Rothschild & Co., Inc.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989) (citing 29 U.S.C. §

> 2101(a)(1) and finding numerosity met where class size of 127
> employees was alleged). Here the alleged class size of 150 to 270
> terminated employees clearly meets the greater-than-forty
> requirement of this circuit.

*In re Spring Ford Ind.*, 2004 Bankr. LEXIS 112, *24, 51; Collier Bankr. Cas. 2d (MB) 1614
(Bankr. E.D. Pa. 2004).

35.    WARN Act class action litigation typically involves claims brought by the former
employees of an employer who number less than the estimated 200 former employees which
make up the proposed class of former First NLC employees. *Grimmer v. Lord Day & Lord*, 937
F. Supp. 255 (S.D.N.Y. 1996) (certifying class of 92 persons).

### (2)    Questions of Law and Fact Are Common to All Members of the Proposed Class.

36.    The second prerequisite of class certification is that "there be questions of law or
fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "[C]lass relief is 'peculiarly appropriate'
when the 'issues involved are common to the class as a whole' and they 'turn on questions of law
applicable in the same manner to each member of the class.'  For in such cases, 'the class-action
device saves the resources of both the courts and the parties by permitting an issue potentially
affecting every [class member] to be litigated in an economical fashion under Rule 23.'"
*General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982), *quoting*, *Califano v. Yamasaki*, 442 U.S.
682, 700-701 (1979).

37.    Here, the Plaintiffs claim that they and the other Settlement Class Members were
terminated as part of a common plan stemming from the Debtors' decision to discontinue
business operations and close their Facilities.  Additionally, the factual and legal questions stem
from a common core of facts regarding the Debtors' alleged actions and a common core of legal
issues regarding every Settlement Class Member's rights, as follows: (a) Debtors employed more

than 100 employees; (b) all the Settlement Class Members are protected by the WARN Act; (c) the Settlement Class Members were employees of the Debtors; (d) the Debtors allegedly discharged the Settlement Class Members on November 30, 2007 or January 11, 2008, and thereafter, allegedly in connection with a mass layoff or plant closing; (e) the Settlement Class Members were "affected employees", as they lost their employment as a result of the mass layoff or plant closing; (f) the Debtors allegedly terminated the employment of the Settlement Class Members without cause; (g) the Debtors allegedly terminated the employment of the Settlement Class Members without giving them at least 60 days' prior written notice as required by the WARN Act; and (h) the Debtors allegedly failed to pay the Settlement Class Members 60 days' wages and benefits.

38.    In short, virtually *all* the issues are common to the Class and the only differences are minor, namely, the rate of pay and the date of termination.

### (3)    The Claims of the Representative Parties are Typical of the Claims of the Class.

39.    Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  The typicality requirement is met when the representative Plaintiffs' claims arise from a course of conduct by Defendants that also gives rise to the claims of other Settlement Class Members based on the same legal theory. *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981); 1 *Newberg*, *supra*, at §3:13 at 326 (4th edition 2002) ("'[Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought'").  The question is whether the class representatives' claims have the same essential characteristics as the claims of the class at large. *Id*.  If the elements of the cause of

action to be proved by the representatives are the same as those of the class, the claim is typical. *Dura-Bilt*, 89 F.R.D. at 99. *Id.*

40.    Here, the Settlement Class Representatives (i.e., the Plaintiffs) suffered the same type of injury as the rest of the Settlement Class and there are no conflicts of interest between the representatives of the Class and the other Settlement Class Members (*See* Johnson Declaration and Kramer Declaration). The Defendants' alleged failure to comply with the requirements of the WARN Act represents a single course of conduct resulting in injury to all Settlement Class Members including the Plaintiffs.  Neither the Plaintiffs nor other Settlement Class Members received 60 days' notice or 60 days' wages and benefits, pursuant to the requirements of the WARN Act (*See* Johnson Declaration and Kramer Declaration attached to Plaintiffs' Motion for Class Certification).

41.    Thus, the factual situation of the Settlement Class Representatives and the legal theories upon which the action is grounded are not only typical of the entire Settlement Class, but are identical.

### (4)    <u>The Plaintiffs Will Fairly and Adequately Protect the Interests of the Class</u>.

42.    Federal Rule of Civil Procedure 23(a)(4) provides that a class action is maintainable only if "the representative parties will fairly and adequately protect the interests of the class."  This element requires a two-step analysis.  First, the court must determine whether the named class representatives have interests that "are free from conflicts of interest with the class they seek to represent. *Amchem Prods v. Windsor*, 521 U.S. 591, 625 (1997).  Second, the court must find that the class would be represented by qualified counsel. *Rodger v. Electronic Data Systems Corp.*, 160 F.R.D. 532 (E.D.N.C. 1995).

43.     The first element of Rule 23(a)(4) is met in this case because, as set forth above, no divergence exists between the interests of the proposed Settlement Class Representatives and the interests of the Settlement Class as a whole.

44.     The second element of Rule 23(a)(4) is met because Plaintiffs' counsel are "qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *cert. denied*, 417 U.S. 156 (1974).   Their background can be summarized as follows:

- Jack Raisner, partner in the New York based firm of Outten & Golden, LLP and member of the firm's Class Action Practice Group, has extensive experience litigating plaintiff employment rights matters, with a focus on the prosecution of class action and impact litigation of wage and hour claims.  René S. Roupinian, of counsel to the firm and also a member of its Class Action Practice Group, has represented tens of thousands of former employees in more than 30 WARN Act cases, many of which were litigated in bankruptcy court. (*See* Roupinian Declaration attached to Plaintiffs' Motion for Class Certification).

- Brett M. Amron, of Brett M. Amron, P.A. of Florida, has extensive experience in complex commercial bankruptcy litigation and has served as counsel to trustees, creditors and debtors.   (*See* Roupinian Declaration attached to Plaintiffs' Motion for Class Certification).

45.     Accordingly, the four prerequisites of Rule 23(a) for class certification are met in this action.

## The Proposed Class Meets the Requirements of Rule 23(B)(3).

46.     In addition to meeting the prerequisites for class certification under Rule 23(a), a class must meet only one of the three alternative requirements for treatment as a class action under Fed. R. Civ. P. 23(b).  Here, the class meets the requirements of Fed. R. Civ. P. 23(b)(3).

47.     Class certification is proper under Rule 23(b)(3) where "the questions of law or fact common to the members of the class predominate over any questions affecting only

individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

48.    Considerations of judicial economy and efficiency are of paramount importance and, where, as here, determination of the common, predominant issues shared by the Class Members will dispose of the matter, class certification should be ordered. *Rodger v. Electronic Data Systems Corp.*, 160 F.R.D. 532 (E.D.N.C. 1995).  A class action is the superior method of resolving this dispute because many of the claims are quite small, making individual lawsuits impracticable. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *Eisen v. Carlisle & Jacquelin*, 391 F.2d at 566-567.   As shown above, common questions of fact and law overwhelmingly predominate over the minor questions affecting individual claims.

49.    In addition, Fed. R. Civ. P. 23(b)(3) requires that the Plaintiff demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."   Four factors are set forth in Fed. R. Civ. P. 23 (b)(3) to guide the court's determination as to whether a class action is superior and whether issues of fact and law common to class members predominate over individual matters:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

50.    Here, neither the Plaintiffs nor any of the other Settlement Class Members have an interest in individually controlling the prosecution of separate actions.   (*See* Johnson Declaration and Kramer Declaration, attached to Plaintiffs' Motion for Class Certification).  To Plaintiffs' knowledge no other litigation concerning the controversy has been commenced. *Id*.

Concentrating the WARN litigation in a class action will avoid multiple suits. Finally, the difficulties in managing this litigation as a class action are few: the Settlement Class Members can be easily identified; the potential liability of the Defendants can be readily calculated; and there is but one combined course of conduct -- that of the Defendants -- to examine and adjudicate. *Id*.

      **C.**    **This Court Should Appoint Outten & Golden LLP and Brett M. Amron P.A. as Settlement Class Counsel.**

      51.    The Chapter 7 Trustee requests that Outten & Golden LLP and Brett M. Amron P.A. be appointed as Settlement Class Counsel. As shown in the Roupinian Declaration, Plaintiffs' counsel is qualified and has been actively and diligently prosecuting this action. Further, as stated in the Roupinian Declaration, the Plaintiffs are being represented by attorneys who are highly experienced in class action litigation and experienced in prosecuting claims under the WARN Act, having been appointed Class Counsel in some 30 WARN class actions (*See* Roupinian Declaration).

      **D.**    **Appointment of Class Representatives**

      52.    The Chapter 7 Trustee requests that Angelia Johnson and Fran Kramer be appointed the Class Representatives. The Plaintiffs have been diligent in pursuing the Class claim and have worked with counsel in initiating and prosecuting the action; they have no conflict of interest with other Settlement Class Members; and they have and will fairly and adequately represent the interests of the Class (*See* Johnson Declaration and Kramer Declaration). For these reasons, the Chapter 7 Trustee asks that the Plaintiffs be appointed Class Representatives.

      **E.**    **The Court Should Preliminarily Approve the Settlement**

53.     After class certification, approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434 (E.D. Pa 2008).  Once a settlement is preliminarily approved, notice of the proposed settlement and of the fairness hearing is provided to class members.  Because the Agreement  in this case will be preliminarily approved pursuant to this Motion, notice of the conditional class certification and proposed settlement can be combined in one notice.  *Id.* at 445; *Collier v, Montgomery County Housing Authority*, 192 F.R.D. 176, 186 (E.D. Pa. 2000)(citing Manual for Complex Litigation § 30.212, at 226).   At the subsequent fairness hearing, class members may formally object to the proposed settlement.  *Gates*, 248 F.R.D. at 439.

54.     "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Id.* at 438 (quoting from Smith v. Professional Billing & Managment Services, Inc., 2007 WL 4191749, at *1 (D. N.J. Nov. 21, 2007)).  *See also, In re Community Bank of Northern Virginia*, 2008 WL 3833271 (D.C. W.D. Pa. Aug. 15, 2008) (conditionally certifying class and preliminarily approving settlement before holding a final hearing).  The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp*., 55 F.3d 768 at 785-86 (3d Cir. 1995); *Gates*, 248 F.R.D. at 444.  When class certification is sought in conjunction with preliminary approval, then class member objections are not relevant.  *Gates*, 248 F.R.D. at 444.

55.      The Agreement has no obvious deficiencies and falls well within the range of reason.  Further, each of the above-cited factors favors preliminary approval of the Agreement. First, the Agreement is the result of good faith arm's length negotiations between capable adversaries.  The primary negotiating parties have been in discussions with respect to the WARN action since it was filed in January 2008.  Further, the Settlement Class is represented by counsel with extensive experience and expertise in WARN Act matters.

56.      Second, the Parties exchanged a significant amount of information during their settlement negotiations.   In particular, the Defendants provided extensive information to Settlement Class Counsel regarding facts and documents that they believe support their defenses and show unforeseen business circumstances that led to the shut-down.  These alleged facts included the sudden melt-down of the subprime mortgage industry and the unilateral decision of the Debtors' lenders to withdraw capital which disables the Debtors from originating mortgages. The Debtors have also shared payroll information and the WARN damages analysis with Settlement Class Counsel.

57.      Settlement Class Counsel have the experience and skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate.  They exercised that judgment in this case with respect to the Agreement.

58.      Accordingly, the Court should preliminarily approve the Agreement.

**F.      The Court Should Approve the Form and Manner of the Proposed Notice of the Settlement.**

59.      Rule 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood

> language: (i) the nature of the action; (ii) the definition of the
> class certified; (iii) the class claims, issues, or defenses; (iv)
> that a class member may enter an appearance through an
> attorney if the member so desires; (v) that the court will
> exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and (vii) the
> binding effect of a class judgment on members under Rule
> 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)

60.    In addition, Rule 23(e) requires that all members of the class be notified of the

terms of any proposed settlement.    Fed. R. Civ. P. 23(e).    The Rule 23(e) requirement is

"designed to summarize the litigation and the settlement and to apprise class members of the

right and the opportunity to inspect the complete settlement documents, papers, and pleadings

filed in the litigation."    *Krell v. Prudential Inc. Co.*, (*In re Prudential Co.*), 148 F.3d 283, 326-27

(3d Cir. 1998).

61.    The proposed Class Notice, which is attached as Exhibit  B to this Motion, will be

served by Settlement Class Counsel upon each Settlement Class Member.    Settlement Class

Counsel proposes that within ten (10) business days following entry of the order certifying the

Class for settlement purposes and preliminarily approving the Agreement, Settlement Class

Counsel will serve the Class Notice substantially in the form attached to the Agreement, upon

each Settlement Class Member at the last known address of each Settlement Class Member

according to the Debtors' books and records.    *Cf. Prudential*, 148 5.3d at 327 (holding that

mailings to last known address of class members and publication in national newspapers

sufficient to provide notice to large, multi-state class).

62.    The Class Notice includes each of the facts required by Rule 23(c)(2)(B).    The

Class Notice also outlines the terms of the Agreement, including attorneys' fees proposed to be

paid to Settlement Class Counsel and describes how each Settlement Class Member may obtain a

copy of the pleadings in the WARN Action and a copy of the Agreement.  The Class Notice also states the date, time location and purpose of the Fairness Hearing, informs each Settlement Class Member of their right to appear at the Fairness Hearing, and describes the procedure for objecting to the Agreement.  Finally, the Class Notice will contain a personalized attachment for each Settlement Class Member setting forth the projected dollar amount such Settlement Class Member would receive under the Agreement, before and after the deduction of the Settlement Class Counsel Fees.

63.    Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

**G.    The Court Should Finally Approve the Settlement at the Fairness Hearing.**

64.    The Court should set a Fairness Hearing that, subject to the Court's calendar, would be heard at least 45 days from the date of service of the Class Notice.  At the Fairness Hearing, the Court should finally approve the Agreement.

65.    Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval."  *Id.*  Final approval of the settlement pursuant to Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2); *Leverso v. Southtrust Bank of Ala., N.A.,* 18 F.3d 1527, 1530-31 (11th Cir. 1994); *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).  "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished."  *Community Bank,* 2008 WL 3833271 at *5 (*quoting General Motors,* 55 F.3d at 785.).

66.     The Eleventh Circuit has held that the following nine factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.  *Leverso*, 18 F.3d at 1530-31 n.6.

67.     The following factors strongly support approval of the Agreement:

- Litigation will be complicated, lengthy and expensive.

- The Class Representatives support the Agreement and Settlement Class Counsel believe that the bulk of the other Settlement Class Members will have a favorable reaction to the Agreement and will neither object to it nor opt out of it.

- The Agreement was reached after the essential facts had been thoroughly investigated by Settlement Class Counsel through extensive disclosures by Defendants' counsel.

- The risk that the Class Representatives would be unable to establish liability was high because of the numerous defenses asserted by the Defendants.

- When considered in light of the best possible recovery and the attendant risks, the settlement falls well within the range of reasonableness.  Further, while the Complaint alleges that any damages are entitled to administrative priority, this issue is unsettled in other Circuits and there is no authority on it in this Circuit .

68.     Based on the foregoing, the Court should finally approve the Agreement under Rule 23 of the Federal Rules of Civil Procedure.

## VIII.   NOTICE

69.     Copies of this Motion have been given to (a) the Office of the United States Trustee, (b) counsel to the Plaintiffs, (c) those parties that requested papers under Bankruptcy Rule 2002, and (d) all known creditors of the Debtors' estates.  The Chapter 7 Trustee submits that the notice of this Motion is adequate.

## CONCLUSION

70.     WHEREFORE, for the reasons set forth above, the Chapter 7 Trustee respectfully requests that the Court enter orders: (i) authorizing the Parties to enter into the Agreement (ii) certifying the Class for settlement purposes only, appointing Settlement Class Counsel and Class Representatives and preliminarily approving the Agreement; (iii) approving the form and manner of the Class Notice; (iv) scheduling a Fairness Hearing to consider final approval of the Agreement; and (v) approving the Agreement on a final basis.

Dated: March 27, 2009

Respectfully submitted,

**I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).**

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
*Attorneys for Deborah C. Menotte, Chapter 7 Trustee*
200 S. Biscayne Boulevard, Suite 2500
Miami, Florida  33131-5340
Telephone: (305) 374-7580
Facsimile: (305) 374-7593

By:____/s/ Jay M. Sakalo_____
       Scott L. Baena
       Florida Bar No. 186445
       Philip R. Stein (admitted *pro hac vice*)
       Jay M. Sakalo
       Florida Bar No. 156310
       Wendy V. Polit
       Florida Bar No. 0051412

## Exhibit A


## SETTLEMENT AGREEMENT

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| FIRST NLC FINANCIAL SERVICES, LLC, et al., | ) | Case No.  08-10632-BKC-PGH |
| | ) | |
| Debtors. | ) | |
| _____/ | ) | |
| | ) | |
| ANGELIA JOHNSON and FRAN KRAMER, on behalf of themselves and all others similarly situated, | ) | Adv. Pro. No.: 08-01130-PGH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FIRST NLC FINANCIAL SERVICES, LLC and FRIEDMAN, BILLINGS, RAMSEY GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is entered into by and among Deborah C. Menotte, the chapter 7 Trustee of the Debtors in the above-captioned chapter 7 proceedings (the "Trustee"), Angelia Johnson and Fran Kramer on behalf of themselves and all similarly-situated former employees of First NLC Financial Services, LLC ("Plaintiffs"), and Friedman Billings & Ramsey Group, Inc. ("FBR"; and, together with the Trustee and Plaintiffs, collectively, the "Parties"):

## RECITALS

**WHEREAS**, on January 18, 2008 (the "Petition Date"), the Debtors sought voluntary relief under chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), Case Number 08-10632-PGH (the "Bankruptcy Cases"); and

**WHEREAS**, on May 12, 2008, the Bankruptcy Cases were converted to cases under chapter 7; and on May 12, 2008, Deborah C. Menotte was appointed the Trustee; and

**WHEREAS,** Plaintiffs commenced the above-captioned adversary proceeding (the "Adversary Proceeding") on February 7, 2008, alleging that the Debtors and FBR (collectively, the "Defendants") violated various provisions of the Federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.,* and the California WARN Act, Cal. Labor Code, § 1400 et. seq. (collectively, the "WARN Acts"); and

**WHEREAS**, Plaintiffs filed amended complaints on February 15, 2008 and April 14, 2008, by consent, to supplement Plaintiffs' allegations of single employer liability on behalf of themselves and similarly situated employees of the Debtors (the "Complaint"); and

**WHEREAS**, Defendants filed motions to dismiss Plaintiffs' Complaint on or about April 28, 2008, which were denied on August 11, 2008; and

**WHEREAS**, the Defendants filed and served their answers on or about August 21, 2008 (collectively the "Answers") denying any violations of the WARN Acts and/or asserting various affirmative defenses that, if proved, would relieve Defendants of all liability under the WARN Acts; and

**WHEREAS**, on or about April 28, 2008, the Plaintiffs filed a motion for class certification, the appointment of Settlement Class Counsel (as defined below), the approval of

the form and manner of notice to the Settlement Class (as defined below) and the appointment of Plaintiffs as class representatives for the Settlement Class, which is pending before the Court; and

**WHEREAS,** there appear to be significant, complex issues of both law and fact in dispute between the Parties that would, absent consensual resolution, require additional extensive discovery and litigation; and

**WHEREAS**, the Parties desire to resolve the matters raised by the Complaint and the Answer and claims asserted by Plaintiffs and any and all employees included within the Settlement Class consensually and according to the terms set forth below,

**NOW THEREFORE**, in consideration of the foregoing recitals and the mutual promises hereinafter contained, the Parties, intending to be fully bound, hereby stipulate and agree as follows:

1. <u>Definition of the "Settlement Class"</u> - The term "Settlement Class" shall mean: former employees of the Debtors, who worked at or reported to the Debtors' Anaheim or Boca Raton Facilities and were terminated without cause on or about (a) November 30, 2007 or (b) January 11, 2008, within 30 days of those dates and thereafter, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) and/or the California Labor Code § 1400 et. seq. (the "Settlement Class Members"). The putative Settlement Class Members are identified in the attached Exhibit A.

2. <u>Certification of Class and Class Representatives</u> – The Trustee consents to certification of the Settlement Class for settlement purposes, only pursuant to Federal Rule of Civil Procedure 23 and Federal Rule of Bankruptcy Procedure 7023 and designation of Plaintiffs as Class Representatives (the "Settlement Class Representatives").

3.    <u>Designation of Settlement Class Counsel</u> – The Trustee consents to the appointment of the law firm of Outten & Golden LLP ("Lead Settlement Class Counsel") and Brett M. Amron, P.A. as counsel to the Settlement Class (collectively, "Settlement Class Counsel").

4.    <u>Effective Date</u> - This Agreement shall become effective (the "Effective Date") upon (a) certification of the Settlement Class by the Bankruptcy Court; (b) entry of a final, non-appealable order of the Bankruptcy Court approving this Agreement; and (c) certification to the Court by Settlement Class Counsel that not more than ten of the potential Settlement Class Members have timely opted out of the Settlement Class.

5.    <u>Settlement Amounts</u> - In full and complete satisfaction of all claims (as that term is defined under 11 U.S.C. § 105(5)) asserted in the Complaint and all alleged claims arising from or related to the WARN Acts asserted in each of the WARN Class Claims and the Individual WARN Claims, the Settlement Class shall receive the following:  Upon the Effective Date, the Settlement Class shall have an allowed, unsecured priority claim in an amount of $400,000 (the "Settlement Amount"), from which the Representative Payments (as defined herein) shall be paid and reimbursement of Lead Settlement Class Counsel's fees and expenses, to the extent approved by the Bankruptcy Court shall be made upon distribution of same by the Trustee from the Debtors' estates.  The Trustee agrees that, as part of the motion to approve this Agreement, she will seek approval from the Bankruptcy Court for authority to make an interim distribution to pay the Settlement Amount on the Effective Date of this Agreement provided, that at such time, the Debtors' estates have sufficient funds on hand to pay, in full, all outstanding (billed and unbilled) chapter 7 and 11 administrative fees and expenses.

6.      <u>Settlement Class Counsel's Fees</u> –  Settlement Class Counsel may seek an order of the Bankruptcy Court allowing it compensation for reimbursement of its reasonable expenses, and payment of its attorneys' fees of not more than one-third (33 1/3%) of the Settlement Amount (collectively, "Settlement Class Counsel Fees"), payable exclusively from the Settlement Amount.  Upon order of the Bankruptcy Court approving such Settlement Class Counsel Fees, the Trustee shall pay Settlement Class Counsel Fees as directed by Settlement Class Counsel contemporaneously with any distribution to the Settlement Class.  The Trustee agrees that she shall not object to any fee application filed before the Bankruptcy Court by Settlement Class Counsel that is consistent with the provisions of this Agreement.  All costs and expenses associated with providing notice to the Settlement Class and other costs associated with representation of the Plaintiffs and the Settlement Class shall be borne by Settlement Class Counsel.

7.      <u>Settlement Class Representative Payment</u> - Plaintiffs, as Settlement Class Representatives, shall each be entitled to a one-time payment of $5,000, payable from the Settlement Amount (the "Representative Payments") and payable upon the distribution of payments to holders of allowed, unsecured priority claims against the Debtors.  The Trustee shall distribute the Representative Payments and pay any local, state or federal tax obligation of the Debtors related to the payment of the Representative Payments and withhold all appropriate local, state and federal tax obligations, garnishments and similar withholding obligations of Plaintiffs.  The Trustee shall not be liable for any personal tax obligation of Plaintiffs arising from or related to the distribution or receipt of the Representative Payment.

8.      <u>Pro Rata Shares of Class Members</u> - Distributions to individual Settlement Class Members shall be made on a pro rata basis, based upon each individual Class Member's average

monthly gross wages or gross salary and all benefits under any employee benefit plan during the sixty (60) day period preceding November 30, 2007 or January 11, 2008, as applicable (the "Back Pay"), *reduced by* gross wages or gross salary and all benefits under any employee benefit plan received by each Settlement Class Member from the Debtors on account of work performed on behalf of the Debtors after November 30, 2007 or January 11, 2008, as applicable (the "Post Termination Period").   The term "pro rata" as used herein shall mean the quotient of each individual Settlement Class Member's Back Pay less Post Termination Pay over the aggregate Back Pay for all Settlement Class Members (such amount being each Settlement Class Member's "Pro Rata Share").   The  formula for determining a Settlement Class Member's Pro Rata Share shall be as follows:

$$\text{\textbf{Pro Rata Share}} = \frac{\text{(Settlement Class Member Back Pay) - (Settlement Class Member Post Termination  Pay)}}{\Sigma(\text{All Settlement Class Members' Back Pay})^{1}}$$

Settlement Class Counsel shall provide the Trustee with its calculation of each Settlement Class Members' Pro Rata Share and the basis for such calculation and the basis for such calculation within ninety (90) days after the Effective Date.  The Trustee shall review and confirm such calculations prior to any distribution.   Any disputes between the Trustee and Settlement Class Counsel regarding such pro rata distribution calculations shall be resolved by the Bankruptcy Court.

9.    <u>Individual Settlement Class Member Distributions</u> - Each individual Settlement Class Member shall be entitled to receive such Settlement Class Member's Pro Rata Share of distributions from the Settlement Amount, net of Lead Settlement Class Counsel Fees and the

---

[1] By way of example only, assuming a Settlement Class Member whose Back Pay totals $1,000, who received $100 in Post Termination Pay, and aggregate Back Pay for all Settlement Class Members totals $100,000, such Class Member's Pro Rata Share would be [($1,000 - $100)/$100,000], or 0.90%.

Representative Payments, to the extent not already paid (a "Distribution").  The formula for each individual Distribution shall be as follows:

$$\text{Distribution} = [(\text{Pro Rata Share}) \times (\text{Settlement Proceeds})][2]$$

Distribution of Settlement Proceeds - The Representative Payments, Settlement Class Counsel Fees and all Distributions to Settlement Class Members shall be made pursuant to, and in accordance with the time set for distributions herein.  The Trustee shall make Distributions of the Settlement Proceeds to the Settlement Class Members and pay any local, state or federal tax obligation of the Debtors related to such Distributions and withhold all appropriate local, state and federal tax obligations, garnishments and similar withholding obligations of each individual Settlement Class Member receiving such Distributions pursuant to this Agreement.  The Debtors shall not be liable for any personal tax obligation of any Settlement Class Member arising from or related to the Distribution or receipt of the Settlement Proceeds.  All Distributions shall be made to the last known address of any Settlement Class Member according to the Debtors' books and records.

10.    Release of Defendants and Related Parties - Except for the rights and obligations arising out of, provided for, or reserved in this Agreement, the Plaintiffs and all other Settlement Class Members, for and on behalf of themselves and their respective predecessors, successor, assigns, affiliates and subsidiaries (collectively, the "Releasing Parties"), do hereby fully and forever release and discharge First NLC Financial Services, Inc., FBR, the Defendants and their current and former shareholders and affiliated entities and their respective officers, directors, shareholders, agents, employees, partners, members, accountants, attorneys, representatives and other agents and all of their respective predecessors, successors and assigns, and the joint

---

[2] By way of example only, if a Settlement Class Member's Pro Rata Share is 0.90% and the Settlement Proceeds, net of Settlement Class Counsel Fees and the Representative Payment, to the extent not already paid total $50,000, the Settlement Class Member would be entitled to 0.90% x $50,000, or $450.

Committee of Creditors Holding Unsecured Claims and all former or current members and attorneys (each a "Released Party" and together the "Released Parties"), of and from any and all claims and rights of any kind that arise from the allegations set forth in the Complaint or similar factual allegations, claims under the WARN Acts, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected or disclosed, that the Releasing Parties may have as of this date against the Released Parties arising out of the factual allegations raised in the Complaint or similar factual allegations, claims under the WARN Acts, including, those asserted by any individual Settlement Class Member, and the Adversary Proceeding; *provided, however*, that claims filed by former employees that do not arise from or relate to the WARN Acts, including, but not limited to, any claims arising from or related to pre-petition wages, salaries or benefits earned by former employees shall not be released hereby. The Debtors expressly reserve the right to object to, offset or oppose any and all other claims, obligations or causes of action, of any type, except those claims allowed pursuant to this Agreement.

11. <u>Plaintiffs and Settlement Class Counsel Agreements</u> – Plaintiffs and Settlement Class Counsel, individually and jointly, hereby agree not to assert any objections, in writing or otherwise, to the Trustee's settlements with FBR (and certain related parties) and the Henschels, each of which is the subject of a pending motion to approve compromise and settlement pursuant to Rule 9019, as such settlements may be amended or modified.

12. <u>Settlement Class Members' Exclusive Remedy</u> - All claims of Settlement Class Members arising from or related to the WARN Acts are to be paid pursuant to the terms of, and in accordance with, this Agreement. This Agreement represents each Settlement Class

Member's exclusive remedy as against any of the Released Parties for all claims or causes of action arising from or related to the WARN Acts.  Accordingly, upon the Effective Date, no Released Party shall be subject to liability or expense of any kind to any Settlement Class Member with respect to any claim or cause of action arising from or related to the WARN Acts, except as set forth in this Agreement and, as of the Effective Date, each Class Member shall be enjoined from instituting or maintaining any claim or cause of action arising from or related to the WARN Acts against any Released Party in any state or federal court or any other forum.

13.     Bankruptcy Court Approval - The Parties shall jointly file a motion or motions seeking an order or orders of the Bankruptcy Court (a) approving the form and manner of notice of the terms of this Agreement to potential members of the Settlement Class; and (b) approving this Agreement.  This Agreement is subject to and contingent upon approval by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 7023 and 9019.    Failure of the Bankruptcy Court to approve this Agreement in its entirety, absent waiver by any affected party, shall render this Agreement null and void and the Parties shall be restored to their respective positions as if this Agreement had never been executed.

14.     Opt Outs - If any potential member of the Settlement Class, including Plaintiffs, timely and properly elect to opt out of the Settlement Class, that claimant's rights and obligations will not be affected by this Agreement and that claimant will have the same rights and obligations as he or she would have had if the Adversary Proceeding had never been filed and this Agreement had never been executed.  Any potential member of the Settlement Class who elects to opt-out shall not have an allowed claim against the Debtors by reason of this Agreement.  The Debtors reserve all rights and defenses against any opt-out party.  Should more than ten potential Settlement Class Members  timely opt out, and absent waiver by the Trustee,

this Agreement shall be voidable upon the election of the Trustee and entry of an order of the Bankruptcy Court voiding this Agreement and providing that the parties are restored to their respective positions as if this Agreement had never been executed.

15.    <u>No Admission of Violation of WARN Acts or Liability</u> - The execution of this Agreement by the Trustee, and any representations or statements made herein by the Trustee, shall not be construed as an admission of any violation of the WARN Acts or liability thereunder.  This Agreement shall not be admissible in any proceeding arising from or related to any of the matters addressed herein, including, but not limited to, the claims raised in the Adversary Proceeding or similar claims raised by parties other than the Plaintiffs or the defenses raised in the Answer.

16.    <u>Attorneys' Fees</u> - Except as provided for herein, each Party shall be responsible for the payment of its own attorneys' fees and expenses.

17.    <u>Assignees</u> - This Agreement shall be binding upon and shall inure to the benefit of the predecessors, successors and assigns of each of the Debtors, the Plaintiffs, FBR, Settlement Class Counsel and the Settlement Class.

18.    <u>Governing Law and Jurisdiction</u> - This Agreement shall be construed pursuant to the laws of the State of Florida and the United States Bankruptcy Code.  The Parties and the Committee agree that the Bankruptcy Court shall have exclusive jurisdiction to resolve any disputes arising from or related to this Agreement.  The Parties further agree that they shall not commence or continue any contested matter, adversary proceeding, lawsuit or arbitration that contests, disputes or is otherwise inconsistent with any provision of this Agreement.

19.    <u>Entire Agreement</u> - This Agreement sets for the entire agreement and understanding between the Parties, Settlement Class Counsel and each Settlement Class Member

as to the subject matter hereof and supersedes all previous agreements and discussions between or among each of the foregoing as to the matters herein addressed.

20.    <u>Counterparts</u> - This Agreement may be executed by two (2) or more counterparts, each of which shall be deemed and original but all of which shall constitute one Agreement. This Agreement may be executed on behalf of any of the Parties by counsel of record either in the Bankruptcy Case or the Adversary Proceeding.  This Agreement may be executed by facsimile or electronic mail and such facsimile or electronic mail signature shall be treated as an original signature.

21.    <u>Joint Efforts/Drafting Party</u> - This Agreement has been prepared by the joint efforts of counsel for each of the Parties.  Each and every provision of this Agreement shall be construed as though each and every party hereto participated equally in the drafting hereof.  Any rule or law that this Agreement be construed against the drafting party shall be inapplicable.

22.    <u>No Reliance</u> - Plaintiffs and Settlement Class Counsel acknowledge and represent that they have relied solely upon facts obtained from their own investigation and, as to Plaintiffs, upon advice of their own counsel, in executing this Agreement, and that they have not relied upon any statement, promise or representation of any nature by the Debtors or their respective counsel.

23.    <u>Dismissal of Adversary Proceeding</u> - Upon the Effective Date, the Adversary Proceeding shall be deemed dismissed with prejudice and Settlement Class Counsel shall file any necessary paper or pleading to effectuate such dismissal within two (2) business days of the Effective Date.

24.    <u>Waiver</u> - The Parties may mutually waive any provision of this Agreement, *provided, however* that such waiver must be in writing, delivered either by mail, courier,

facsimile or electronic mail.  A waiver of any provision of this Agreement will not constitute a waiver of any other provision.  The Parties may modify or amend this Agreement only by a written agreement that all of the Parties have signed, and subject to any necessary Bankruptcy Court or other approval.

      25.    <u>Headings</u> - Headings included in this Agreement have no independent meaning.

**[Signature Page to Follow]**

**STIPULATED AND AGREED TO BY**

Deborah C. Menotte, chapter 7 Trustee to the
Debtors, First NLC Inc., et al.

By: _____
Name: _____ JAY SAKALO _____
Title: __ Counsel to Chapter 7 trustee __
Date: Date:  March 27, 2009

ANGELIA JOHNSON and FRAN KRAMER,
on behalf of themselves and similarly situated
former employees of First NLC Inc.,

By: _____
Name:  René S. Roupinian
Title: Counsel to Plaintiffs
Date:  March 27, 2009

Friedman Billings & Ramsey Group, Inc.

By: _____
Name: _____
Title: _____
Date: Date:  March ___, 2009

13

# EXHIBIT A

| | Last Name | First Name | Address | City | State | Zip |
|---|---|---|---|---|---|---|
| 1 | Acosta | Amber L. | 15124 Rolling Ridge Drive | Chino Hills | CA | 91709 |
| 2 | Acosta | Michelle Meregelda | 5685 Portage St. | Yorba Linda | CA | 92887 |
| 3 | Agarwal | Pretti | 20041 Osterman Rd., # S-14 | Lake Forest | CA | 92630 |
| 4 | Agoncillo | Aaron A. | 1914 Cumberland Drive | West Covina | CA | 91792 |
| 5 | Altneu | Jason S. | 437 SW 1st Street | Boca Raton | FL | 33432 |
| 6 | Amann | Cherryl R. | 4025 North Federal Highway, #124A | Fort Lauderdale | FL | 33308 |
| 7 | Amaro | Jennifer (Jenny) L. | 17931 Bell Cirlce, #B | Huntington Beach | CA | 92647 |
| 8 | Anderson | Joanne F. | 324 SE 10th Court | Deerfield Beach | FL | 33441 |
| 9 | Anis | Sofia R. | 1336 W. Velencia Drive, Apt. A | Fullerton | CA | 92833 |
| 10 | Appel | Eric | 3470 W. Hillsboro Blvd., #204 | Coconut Creek | FL | 33073 |
| 11 | Arce | Anthony | 4215 Turnberry Circle, #404 | Lake Worth | FL | 33467 |
| 12 | Arillo | Emilia | 7847 Oak Grove Circle | Lake Worth | FL | 33467 |
| 13 | Ashley | DeBorah L. | 6414 Deramus Avenue | Huntsville | AL | 35802 |
| 14 | Bannister | Heidi E. | 6821 Laurelhurst Dr. | Huntington Beach | CA | 92647 |
| 15 | Barfield | Martha | 7124 Colony Club Drive, Apt. #4-202 | Lake Worth | FL | 33463 |
| 16 | Bashore | James C. | 1445 N. Hope Avenue | Ontario | CA | 91764 |
| 17 | Bassos | Michael C. | 12230 NW 30th Manor | Sunrise | FL | 33323 |
| 18 | Bello | Robert | 8458 Boca Glades Blvd. | Boca Raton | FL | 33434 |
| 19 | Bennett | Richard A. | 3576 NW 11th Avenue | Sunrise | FL | 33351 |
| 20 | Ber | Juan Carlos | 6240 Swans Terrace | Coconut Creek | FL | 33073 |
| 21 | Berckerlegg | Bernard R. | PO BOX 1848 Paine Av. | Prides Crossing | MA | 01965 |
| 22 | Billings | Rasheda K. | 2949 E. Maple, Apt. C | Orange | CA | 92869 |
| 23 | Bloch | Kevin M. | 20291 NE 30th Avenue, Apt. #102 | Aventura | FL | 33180 |
| 24 | Bowden | Michele L. | 14392 Cherrywood Lane | Tustin | CA | 92805 |
| 25 | Brand | Steven R. | 2821 SW 87th Avenue, #811 | Davie | FL | 33328 |
| 26 | Bright | Toni M. | P.O. BOX 5493 | Irvine | CA | 92616 |
| 27 | Brigman | Charles D. | 7581 Doubleton Drive | Delray Beach | FL | 33484 |
| 28 | Bristol | Ashton W. | 3870 Sabal Lakes Road | Delray Beach | FL | 38445 |
| 29 | Brown | Stacie B. | 130 SW 7th Avenue | Delray Beach | FL | 33444 |
| 30 | Brown | Kenyon E. | 8257 East Black Willow Circle, #100 | Anaheim Hills | CA | 92808 |
| 31 | Bryson | Charles | 243 Newland Street | Los Angeles | CA | 90042 |
| 32 | Buckley | Marc | 6769 Hertiage, Unite 108 | Boynton Beach | FL | 33437 |
| 33 | Burdgick | Larry | 6854 Tiburon Drive | Boca Raton | FL | 33433 |
| 34 | Bushnell | Amanda L. | 1051 Site Dr., #117 | Brea | CA | 92821 |
| 35 | Camarena | Norma | 13856 La Jolla Plaza | Garden Grove | CA | 92844 |
| 36 | Cano | Cindy C. | 13815 Maidstone Avenue | Norwalk | CA | 90650 |
| 37 | Casillas, Sr. | Victor M. | 8076 Bluff View Lane | Corona | CA | 92880 |
| 38 | Castaneda | Joseph C. | 17617 Runnymead St. | Van Nuys | CA | 91406 |
| 39 | Castaneda | Rosa | 2011 W. Katella Avenue, #24 | Anaheim | CA | 92804 |

# EXHIBIT A

| | | | | | | |
|---|---|---|---|---|---|---|
| 40 | Chapman | Brent D. | 7911 Manor Forest Blvd. | Boynton Beach | FL | 33436 |
| 41 | Chu | Cathy | 1047 S. Ramona St. | San Gabriel | CA | 91776 |
| 42 | Claassen | Christopher G. | 22081 Robin Street | Lake Forest | CA | 92630 |
| 43 | Clark | Michael | 4490 NW 45th Terrace | Coconut Creek | FL | 33073 |
| 44 | Cloninger | James R. | 12051 Bayport Street, Apt. 1-109 | Garden Grove | CA | 92840 |
| 45 | Cook | Maria | 6334 Pomegranate Ct. | Corona | CA | 92880 |
| 46 | Cooper | Jana E. | 1219 State College Blvd. # 243 | Anaheim | CA | 92806 |
| 47 | Cortez | Katherine | 13152 Pleasant St., #4 | Garden Grove | CA | 92843 |
| 48 | Cosentino | Robert G. | 6486 Saranac Circle | Davie | FL | 33331 |
| 49 | Coulson | Richard | 2265 SW 22nd Avenue, #103 | Delray Beach | FL | 33445 |
| 50 | Cunningham | John | 600 SW 167th Way | Pembroke Pines | FL | 33027 |
| 51 | Davila | Rosa E. | 20 SE 8th Terrace | Deerfield Beach | FL | 33441 |
| 52 | Davis | Tishena M. | 3345 N.W. 204th Terrace | Miami | FL | 33056 |
| 53 | Del Toro | Belinda | 251 N. Holly | Orange | CA | 92868 |
| 54 | Delgado | Vanessa N. | 18427 Del Bonita St. | Rowland Heights | CA | 91748 |
| 55 | Disharoon | Daniel | 21551 Brookhurst St., Apt. 140 | Huntington Beach | CA | 92646 |
| 56 | Dolar | Joanne | PO BOX 8595 | Anaheim | CA | 92780 |
| 57 | Dominguez | Pauline R. | 8726 Ocean View, #A | Whittier | CA | 90605 |
| 58 | Duffy | Peter Darren | 227 Avenida De La Grulla | San Clemente | CA | 92672 |
| 59 | Egan | Jennifer | 128 Via Paradisio | Palm Beach Gardens | FL | 33418 |
| 60 | Egan | Jennifer L. | 148 Via Sego | Redondo Beach | CA | 90277 |
| 61 | Elsass | Kimberly | 4518 NW 51st Court | Coconut Creek | FL | 33073 |
| 62 | Erwin | James E. | 23875 Coral Bay | Dana Point | CA | 92629 |
| 63 | Facundus | Roseanna | 1584 West Cris Avenue | Anaheim | CA | 92802 |
| 64 | Fagan | Shanon L. | 2821 NE 45th Street | Lighthouse Point | FL | 33064 |
| 65 | Fay | Brooke C. | 17085 Camino Galvez | Yorba Linda | CA | 92886 |
| 66 | Felton | John W. | 9717 Sills Drive East, Unit 204 | Boynton Beach | FL | 33437 |
| 67 | Ferrante | Chris | 15895 Indies Court | Fountain Valley | CA | 92708 |
| 68 | Fisher | America M. | 16761 Viewpoint Lane, # 185 | Huntington Beach | CA | 92647 |
| 69 | Fisher | Karla J. | 856 Grenada Circle | Placentia | CA | 92870 |
| 70 | Flores | Rocky | 7630 Cedarcliff Ave. | Whittier | CA | 90606 |
| 71 | Foster | Kathryn | 961 S. Pembroke Rod | San Dimas | CA | 91773 |
| 72 | Frishman | Susan M. | 5286 Buckhead Circle | Boca Raton | FL | 33486 |
| 73 | Fuller | Carol L. | 2407 Nikki Ct., #2 | West Covina | CA | 91792 |
| 74 | Galvez | Anna Maria | 1399 NW 4th Street | Boca Raton | FL | 33486 |
| 75 | Gemmati | Carla J. | 212 Lake Pointe Drive, #313 | Fort Lauderdale | FL | 33309 |
| 76 | Gibney | Douglas | 3289 NW 26th Avenue | Boca Raton | FL | 33434 |
| 77 | Gilmore, Jr. | Thomas | 3401 Hillsboro Blvd., #M-102 | Coconut Creek | FL | 33073 |
| 78 | Gomez | Sandra A. | 5832 NW 41st Lane | Coconut Creek | FL | 33073 |
| 79 | Gonzales | Clarita A. | 263 So. Hillcrest Street | Anaheim | CA | 92807 |
| 80 | Gonzalez | Carolina | 890 NW 86th Avenue, #905 | Plantation | FL | 33324 |

# EXHIBIT A

| | | | | | | |
|---|---|---|---|---|---|---|
| 81 | Gordon | Jacqueline A. | 417 N. Linwood Ave. | Santa Ana | CA | 92701 |
| 82 | Graf | Jill S. | 431 W. Camino Real, Apt. #16 | Boca Raton | FL | 33432 |
| 83 | Guinn | Cathy L. | 5811 Myrtle Drive | Fort Pierce | FL | 34982 |
| 84 | Gurrola | Luciana | 906 East Elder Avenue | Santa Ana | CA | 92707 |
| 85 | Hackett | Lesley S. | 671 SW 15th Street | Boca Raton | FL | 33486 |
| 86 | Hamilton | Marguerite M. | 19901 Oslo Court | Boca Raton | FL | 33434 |
| 87 | Hardin | Debra J. | 122 SW 169th Avenue | Pembroke Pines | FL | 33027 |
| 88 | Hardware | Francisco | 7901 SW 8th Street | North Lauderdale | FL | 33068 |
| 89 | Harris | Lisa | 5365 NE 4th Terrace | Fort Lauderdale | FL | 33334 |
| 90 | Harter | Susannah Lee Middleton | 2012 Normandy Circle | West Palm Beach | FL | 33409 |
| 91 | Hawkins | Robert B. | 18573 Harbor Light Way | Boca Raton | FL | 33498 |
| 92 | Hennessey | Martin J. | 5364 Courtney Circle | Boynton Beach | FL | 33437 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| 97 | Hightower | Marie J. | 1490 NW 70th Lane | Margate | FL | 33063 |
| 98 | Hoang | Theresa T. | 401 N. Beth St., #D | Anaheim | CA | 92806 |
| 99 | Homer | Fallon N. | 832 NW 111st Avenue | Plantation | FL | 33324 |
| 100 | Hubbard | Anita M. | 8155 Rose Marie Avenue West | Boynton Beach | FL | 33437 |
| 101 | Hubbard | Anita M. | 8155 Rose Marie Avenue | Boynton Beach | FL | 33437 |
| 102 | Hundrieser | David M. | 26 Via Brida | Rancho Santa Margari | CA | 92688 |
| 103 | Jaskolka | Martha | 3299 NW 47th Avenue | Coconut Creek | FL | 33063 |
| 104 | Jeffers | Pauline A. | 21736 Newvale Dr. | Lake Forest | CA | 92630 |
| 105 | Jimenez | Morea L. | 1201 W. Diamond St., Apt. #11 | Anaheim | CA | 92801 |
| 106 | Johnson | Angelia M. | 12188 Central Ave., #442 | Chino | CA | 91710 |
| 107 | Jones | Randall W. | 3106 City Lights Drive | Aliso Viejo | CA | 92656 |
| 108 | Ju | Humphrey M. | 24111 Castilla Lane | Mission Viejo | CA | 92691 |
| 109 | Kimble | Marie F. | 8970 Equus Circle | Boynton Beach | FL | 33437 |
| 110 | Koewing | Lars O. | 136 SW 14th Street | Pompano Beach | FL | 33060 |
| 111 | Kopp | Brandon | 904 30th Court | West Palm Beach | FL | 33407 |
| 112 | Koren | Craig A. | 5370 Oakmont Village | Lake Worth | FL | 33463 |
| 113 | Korsano | Michael T. | 7081 NW 16th Street, B122 | Plantation | FL | 33313 |
| 114 | Kramer | Fran R. | 8299 Marsala Way | Boynton Beach | FL | 33437 |
| 115 | Laguana | Vincent | 14731 Purdy St. | Midway City | CA | 92655 |
| 116 | Lavoie | Donna | 409 SE 2nd Street | Deerfield Beach | FL | 33441 |
| 117 | Le | Jackie | 1631 W. Houston Ave. | Fullerton | CA | 92833 |
| 118 | Leger | Maribel L. | 12911 Dale St., #45 | Garden Grove | CA | 92841 |
| 119 | Lewis | Larry P. | 1734 Vestal way | Coral Springs | FL | 33071 |
| 120 | Lieder | Leonard M. | 303 Racquet Club Road, Apt. #201 | Weston | FL | 33326 |

# EXHIBIT A

| | | | | | | |
|---|---|---|---|---|---|---|
| 121 | Lindfors | Christina M. | 1801 SW 14th Court | Fort Lauderdale | FL | 33312 |
| 122 | Livesey | Marc R. | 5230 SW 23rd Terrace | Davie | FL | 33312 |
| 123 | Loney | Karen J. | 10665 NW 69th Place | Parkland | FL | 33076 |
| 124 | Lozano | Valerie A. | 1712 W. 3rd Street | Santa Ana | CA | 92703 |
| 125 | Lungarini | Karen E. | 10738 Sea Cliff Circle | Boca Raton | FL | 33498 |
| 126 | Ma | Long K. | 175 Rio Vista, Apt. #26A | Anaheim | CA | 92806 |
| 127 | MacLeod | Kelly | 545 S. Clementine St. | Anaheim | CA | 92504 |
| 128 | Magno | Aimee P. | 9931 Baybreeze Drive | Huntington Beach | CA | 92646 |
| 129 | Malcolm | Stacey K. | 9863 Coronado Lake Drive | Boynton Beach | FL | 33437 |
| 130 | Marose | Derek | 10714 NW 19th Street | Coral Springs | FL | 33071 |
| 131 | Martin | Susan Ruth | 1441 E. Fairway Drive | Orange | CA | 92866 |
| 132 | Martos | Marlene D. | 4821 NW 9th Street | Fort Lauderdale | FL | 33309 |
| 133 | McAlpin | Aviance C. | 2630 West Felicidad Circle, #C | Anaheim | CA | 92801 |
| 134 | McClain | Jeremiah | 706 Bellecour Way | Lake Forest | CA | 92630 |
| 135 | McDonald | Shane | 10508 West Sample Road | Coral Springs | FL | 33065 |
| 136 | McGuinness | Denise | 27106 Hostettler Road | Corona | CA | 92883 |
| 137 | Medina | Johnny | 221 East Cleveland Avenue | Montebello | CA | 90640 |
| 138 | Mejia | Ruth Trevino | 14901 Newport Ave., #45 | Tustin | CA | 92780 |
| 139 | Mercado | Linda M. | 3632 Greenglade Avenue | Pico Rivera | CA | 90660 |
| 140 | Miskela | Thomas J. | 10292 Islander Dr. | Boca Raton | FL | 33498 |
| 141 | Monson | Patricia A. | 5638 Wellesley Pk. Drive | Boca Raton | FL | 33433 |
| 142 | Moore | John Douglas | 550 Jefferson Drive, #111 | Deerfield Beach | FL | 33442 |
| 143 | Morales | Haideline M. | 416 Coronado Street | San Dimas | CA | 91773 |
| 144 | Munoz, II | Vincent Michael | 7801 Santa Rita | Stanton | CA | 92812 |
| 145 | Myzel | Elsa | 14621 Mercado Avenue | La Mirada | CA | 90638 |
| 146 | Nadal | Stephen (Steve) M. | 5839 Fidler Avenue | Lakewood | CA | 90712 |
| 147 | Naqvi | Hussain | 20041 Osterman Rd., # S-14 | Lake Forest | CA | 92630 |
| 148 | Nash | Carroll A. | 3010 Thames Way | Miramar | FL | 33025 |
| 149 | Nash | Crystal R. | 326 No. Pennsylvania Ave. | Glendora | CA | 91741 |
| 150 | Nguyen | Christine H. | 11072 Avonlencia Pl | Garden Grove | CA | 92840 |
| 151 | Nguyen | David | 3354 W. Orange Avenue, Apt. #63 | Anaheim | CA | 92804 |
| 152 | Nguyen | Denise | 41 Solstice | Irvine | CA | 90680 |
| 153 | Nguyen | Kim N. | 15322 Oak Cliff Drive | Westminster | CA | 92683 |
| 154 | Nisall | Greg N. | 2414 NW 138th Drive | Sunrise | FL | 33323 |
| 155 | Olshanetsky | Paula E. | 880 Cypress Park Way, #I | Deerfield Beach | FL | 33064 |
| 156 | Ordner | James | 2775 Mesa Verde Drive East, Apt. #R207 | Costa Mesa | CA | 92626 |
| 157 | Pathman | James M. | 702 S.W. 33rd Place | Boynton Beach | FL | 33435 |
| 158 | Pham | Giang L. | 11918 Brookharen St. | Garden Grove | CA | 92840 |
| 159 | Pitts, Sr. | Gregory D. | 6759 Piedmont Street | Chino | CA | 91710 |
| 160 | Raney | James K. | 6212 Colina Pacifica | San Clemente | CA | 92673 |
| 161 | Redman | Rebekah V. | 920 Somerset Avenue | Pomona | CA | 91767 |

# EXHIBIT A

| | | | | | | |
|---|---|---|---|---|---|---|
| 162 | Richmond | Merline | 7620 Westwood Dr., Unit #210 | Tamarac | FL | 33321 |
| 163 | Rico | Janet | 26927 Poppy Pl. | Mission Viejo | CA | 92692 |
| 164 | Riden | Robert J. | 10802 Crescendo Circle | Boca Raton | FL | 33498 |
| 165 | Rivera | Jose A. | 4752 W. Atlantic Blvd., Apt. #311 | Coconut Creek | FL | 33063 |
| 166 | Rivera | Carlos | 920 East 18th St. | Santa Ana | CA | 92706 |
| 167 | Roberston | James D. | 4367 Avian Avenue | Fort Myers | FL | 33916 |
| 168 | Rocha | Andy | 9912 E. Belmont Street, Apt. A | Bellflower | CA | 90706 |
| 169 | Rodriguez | Sheri L. | 1203 W. 6th Street, #36 | Corona | CA | 92882 |
| 170 | Rosales Partida | Marilyn V. | 2027 S. Rene Drive | Santa Ana | CA | 92704 |
| 171 | Saenz | Ron | 4407 NW 42nd Terrace | Coconut Creek | FL | 33073 |
| 172 | Sajonas | Douglas Vales | 1609 E. Balard Street | Carson | CA | 90745 |
| 173 | Schloss | Leonard C. | 19408 Preserve Drive | Boca Raton | FL | 33498 |
| 174 | Scott | Tamara | 12178 NW 46th Street | Coral Springs | FL | 33076 |
| 175 | Scully | Margaret | 1631 Riverview Road, Apt. #304 | Deerfield Beach | FL | 33441 |
| 176 | Sethi | Vikash K. | 527 N. Hampton Street | Anaheim | CA | 92801 |
| 177 | Shaw | Amelia L. | 2800 N.W. 56th Avenue, Apt. #G-101 | Lauderhill | FL | 33313 |
| 178 | Shimono | Carolyn Y. | 206 N. Primrose Avenue | Monrovia | CA | 91016 |
| 179 | Sibrian | Blanca E. | 2715 N. Rivertrail Road | Orange | CA | 92865 |
| 180 | Silva | Isboset | 8846 Indiana Avenue | Riverside | CA | 92503 |
| 181 | Skeffrey | Steve | 13171 85th Road North | West Palm Beach | FL | 33412 |
| 182 | Smith | Dawn S. | 8070 Cleary Blvd., Villa #702 | Plantation | FL | 33324 |
| 183 | Snyder | Lisa | 4343 NW 114th Avenue | Sunrise | FL | 33323 |
| 184 | Sok | Malin | 4205 E. Anaheim Street, Apt. #302 | Long Beach | CA | 90804 |
| 185 | Stromberg | Patricia | 4535 Tonyon Rd. | Riverside | CA | 92602 |
| 186 | Tamburri-Saunders | Rachel A. | 401 NE 45th Street | Boca Raton | FL | 33431 |
| 187 | Taylor | Scott I. | 1212 Manor Drive South | Weston | FL | 33326 |
| 188 | Thiel | Douglas J. | 6345 Maynada Street | Coral Gables | FL | 33146 |
| 189 | Thune | Maurice C. | 5964 Meadowood Ct. | Chino Hills | CA | 91709 |
| 190 | Tommerson | Stephanie | 6370 Gallal Way | Yorba Linda | CA | 92887 |
| 191 | Torres | Evelyn | 11719 Everston St. | Norwalk | CA | 90650 |
| 192 | Trim | Brenda M. | 3081 SW 195th Terrace | Miramar | FL | 33029 |
| 193 | Valenzuela | Susana | 235 Fernwood Street | West Covina | CA | 91791 |
| 194 | Vicario | Kenneth (Kenny) F. | 831 E. Orangewood Ave, Apt. #C124 | Anaheim | CA | 92802 |
| 195 | Villanueva-Barrios | Lydia C. | 15755 Pecan Lane | Fontana | CA | 92337 |
| 196 | Vincent | Jay | 8433 NW 52nd Place | Coral Springs | FL | 33067 |
| 197 | Vincent | Trina A. | 417 Edgebrooke Lane | Woodstock | GA | 30188 |
| 198 | Walsh | Timothy | 8096 Crestview Ct. | Rancho | CA | 91701 |
| 199 | Wiles | Lesley Ann | 11819 Central Avenue, Apt. #601 | Chino | CA | 91710 |

# EXHIBIT A

| | | | | | | |
|---|---|---|---|---|---|---|
| 200 | Williams | Jaime R. | 9341 NW 24th Place | Sunrise | FL | 33322 |
| 201 | Wong | Robert | 4042 Lake Tahoe Circle | West Palm Beach | FL | 33409 |
| 202 | Wood-Tackore | Audrey M. | 12105 67th St. North | West Palm Beach | FL | 33412 |
| 203 | Wright | Doug | 2731 Ravella Way | Palm Beach Gardens | FL | 33410 |
| 204 | Zamora | Maribel | P.O. BOX 3514 | La Habra | CA | 90632 |

**EXHIBIT B**


**FORM OF CLASS NOTICE**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:

FIRST NLC FINANCIAL SERVICES, LLC, et al.

Debtors.

Case No. 08-10632-PGH
Chapter 11

ANGELIA JOHNSON and FRAN KRAMER, on behalf of
themselves and all others similarly situated,

Adversary Proceeding
No. 08-01330-PGH

Plaintiff.

v.

FIRST NLC FINANCIAL SERVICES, LLC and
FRIEDMAN, BILLINGS, RAMSEY GROUP, INC.,

Defendants.

## NOTICE OF CLASS ACTION, PROPOSED
## SETTLEMENT  AND FAIRNESS HEARING

**TO**:  **CERTAIN FORMER TERMINATED EMPLOYEES OF FIRST NLC FINANCIAL
SERVICES, LLC, ET AL.**

There is currently pending before the United States Bankruptcy Court for the Southern District of

Florida (the "Bankruptcy Court") a lawsuit entitled *Angelia Johnson and Fran Kramer, on Behalf of*

*Themselves and All Others Similarly Situated, vs. First NLC Financial Services, LLC,  et al.,* Adversary

Proceeding No. 08-11330 (PGH) (the "Action").  The parties to this Action have reached a proposed

settlement ("Settlement") under which, among other things, benefits would be provided to Plaintiffs'

Counsel, Plaintiffs and the putative class members (each defined below).  The Bankruptcy Court has

authorized the dissemination of this Notice.  You should review this Notice carefully as your rights may be

affected by the proposed Settlement.

## SUMMARY OF THE CLASS

The class members (referred to collectively as "Settlement Class Members" and individually as "Settlement Class Member") in this action are: former employees of the Debtors,  who worked at or reported to the Debtors' Anaheim or Boca Raton Facilities and were terminated without cause on or about November 30, 2007 or January 11, 2008, within 30 days of those dates and thereafter, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) and/or the California Labor Code § 1400 et. seq. (the "Settlement Class Members").  The Plaintiffs, Angelia Johnson and Fran Kramer, are former employees of First NLC and brought this Class Action on behalf of the Class Members (hereinafter the "Settlement Class Representatives").

## DESCRIPTION OF THE ACTION

On January 18, 2008, First NLC filed a petition with the Bankruptcy Court for relief under Chapter 11 of the Bankruptcy Code.

On or about November 30, 2007 and January 11, 2008 or within 30 days of those dates First NLC terminated a total of approximately 205 employees.

On or about February 7, 2008, Angelia Johnson and Fran Kramer, on behalf of themselves and other similarly situated former employees of First NLC, filed their Class Action Adversary Proceeding Complaint (the "Complaint") with the Bankruptcy Court commencing the Action, alleging violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et. seq. (the "WARN Act"), seeking damages on behalf of certain former employees of First NLC.

In the Action, the Plaintiffs seek to recover sixty (60) days pay and ERISA benefits for themselves and each of the other similarly situated salaried employees who were terminated without cause at any time within the thirty day period preceding November 30, 2007 or January 11, 2008 or within 30 days of those dates.

First NLC has denied any liability in the Action.  Among other things, First NLC contends that it

was excused from providing advance written notice of the cessation of its operations because it was actively seeking financing or business, which, if obtained, would have avoided or postponed the shutdown.

At a hearing held on April __, 2009, the Bankruptcy Court (i) certified a class for settlement purposes only pursuant to Federal Rule of Civil Procedure 23 and Federal Rule of Bankruptcy Procedure 7023; (ii) appointed Plaintiffs as the Settlement Class Representatives; (iii) appointed Plaintiffs' Counsel as Class Counsel ("Settlement Class Counsel"); (iv) preliminarily approved the Settlement; (v) approved this Notice and (vi) established a date for a final hearing (the "Fairness Hearing") for approval of the Settlement.

## COUNSEL TO THE PARTIES

Outten & Golden LLP and Brett M. Amron, P.A., were appointed Settlement Class Counsel by the Bankruptcy Court.  Any questions you may have concerning the proposed settlement should be directed to René S. Roupinian of Outten & Golden LLP, 3 Park Avenue, 29th Floor, New York, NY 10016, by telephone at (212) 245-1000, or by fax to her attention at (212) 977-4005, or by email to rroupinian@outtengolden.com.

Counsel to the Trustee, Deborah C. Menotte, are Jay M. Sakalo and Philip R. Stein of Bilzin Sumberg Baena Price & Axelrod LLP, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131-5340.  Questions concerning the proposed Settlement should **not** be directed to the Trustee or her counsel.

## THE PROPOSED SETTLEMENT

The proposed Settlement is set out in the Settlement Agreement (the "Agreement").  The following description of the proposed Settlement is only a summary and is qualified in its entirety by the terms of the proposed Settlement set forth in the Agreement, and any inconsistency shall be governed by the terms of the Agreement.  You may request the complete text of the Agreement from

René S. Roupinian of Outten & Golden LLP by using the contact information set forth above.

The principal terms of the proposed Settlement can be summarized as follows:

- The Debtors consent to certification of a class for purposes of settlement. The term "Settlement Class" shall mean: former employees of the Debtors, who worked at or reported to the Debtors' Anaheim or Boca Raton Facilities and were terminated without cause on or about November 30, 2007 or January 11, 2008, within 30 days of those dates and thereafter, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) and/or the California Labor Code § 1400 et. seq.

- The Trustee has the right, but not the obligation, to withdraw from the Settlement if the number of putative Class Members that timely opt-out of the Class exceeds ten of the total potential Settlement Class Members.

- The Class will receive an allowed unsecured priority claim under 11 U.S.C. § 507(a)(4),(5) against the Debtors' estates in the amount of $400,000 (the "Settlement Amount"), which shall be made upon distribution of same by the Trustee from the Debtors' estates. The Trustee agrees that, as part of the motion to approve this Agreement, she will seek approval from the Bankruptcy Court for authority to make an interim distribution to pay the Settlement Amount on the Effective Date of this Agreement provided that, at such time, the Debtors' estates have sufficient funds on hand to pay, in full, all outstanding (billed and unbilled) chapter 7 and 11 administrative fees and expenses.

- The Plaintiffs, as Settlement Class Representatives, will each receive a $5,000 payment (the "Representatives Payment") as compensation for their services on behalf of the Settlement Class. Debtors shall pay the Debtors' tax obligations arising from or related to the Representative Payments and withhold any appropriate local, state or federal tax, garnishment or similar withholding obligation of the Representative Payments and remit such withholdings to the appropriate authorities. Debtors shall assume no liability for Plaintiffs' individual tax or withholding obligations.

- Lead Settlement Class Counsel will seek approval from this Court for (a) reasonable out of pocket expenses and (b) attorneys' fees of one-third of the Settlement Proceeds, after deducting the Representative Payments ("Class Counsel Fees"). Payment of all Settlement Class Counsel Fees shall be made exclusively from the Settlement Amount. Payment of Lead Settlement Class Counsel Fees is subject to this Court's approval.

- The net Settlement Proceeds, after deducting the Representatives Payment, Class Counsel Fees, and each individual Class Member's tax and withholding obligations, will be paid to each member of the Class on a pro rata[1] basis by the Debtors. Distributions to Settlement Class Members shall be made net of pay and benefits received by each individual Class Member from the Debtor on account of work performed on behalf of the Debtor after

---

[1] Further description of the pro rata nature of the distributions of the Settlement Proceeds can be found in the Agreement.

January 11, 2008.  Debtor shall pay the Debtors' tax obligations arising from or related to the distribution of any Settlement Proceeds to Settlement Class Members and withhold any appropriate local, state or federal tax, garnishment or similar withholding obligation of each Settlement Class Member and remit such withholdings to the appropriate authorities. Debtors shall assume no liability for any Settlement Class Member's individual tax or withholding obligations.

- The effectiveness of the Settlement is contingent upon: (i) certification of the Class for settlement purposes by this Court; (ii) the number of putative Settlement Class Members that timely opt-out of the Class not exceeding ten of the total potential Settlement Class; and (iii) entry of a final non-appealable order by this Court approving the Settlement.

The proposed Settlement will be presented to the Bankruptcy Court for final approval at the Fairness Hearing to be held on ____ ___, **2009 at ___: __.m**. in Courtroom A of the United States Bankruptcy Court for the Southern District of Florida, 1515 North Flagler Drive, Room 801, West Palm Beach, Florida 33401.

The Court will, at that time, decide whether the Settlement is fair, reasonable and adequate to the Settlement Class Members and whether the request of Lead Settlement Class Counsel for attorneys' fees and expenses should be approved.  As explained below, you have the right to opt-out of the Class and/or object to the proposed Settlement including the Lead Settlement Class Counsel's request for attorneys' fees and expenses and to appear in person at the Fairness Hearing to be heard, or to engage counsel to do so on your behalf.

## <u>OBJECTIONS</u>

If you believe the proposed Settlement is unfair or otherwise wish to object to the proposed Settlement, including Lead Settlement Class Counsel's request for attorneys' fees and expenses, you must do so by mailing a written statement bearing the caption of this case that appears on the first page of this notice setting forth the reason(s) for your objection to the Clerk of the Court (the "Clerk"), United States Bankruptcy Court for the Southern District of Florida, 1515 North Flagler Drive, Room 801, West Palm Beach, Florida 33401, and sending copies to (1) Lead Class Counsel, Outten & Golden LLP, 3 Park Ave, 29th Floor, New York, NY 10016, Attn:  René S. Roupinian; and (2) the Trustee, c/o

Bilzin Sumberg Baena Price & Axelrod LLP, 200 S. Biscayne Blvd., Suite 2500, Miami, Florida, Attn: Wendy V. Polit.  Objections must be **RECEIVED** by the Clerk, Class Counsel and the Trustee no later than **\_\_\_\_\_, \_\_ 2009**, and must include the case name and number, your name, address and telephone number together with the basis for your objection.  You or your counsel must also appear at the Fairness Hearing when the Court considers your objection and final approval of the Settlement.

You also have the right, but are not required, to retain counsel to appear for you, to object on your behalf and be heard at the Fairness Hearing at which the Court will consider whether to finally approve the Settlement.

If you elect to engage counsel, your counsel must file an appearance with the Court no later than **May \_\_\_, 2009** and at that time also file a statement setting forth any objections on your behalf. Copies of the appearance and the objection must be mailed at the same time to (1) Class Counsel, Outten & Golden LLP, 3 Park Ave, 29th Floor, New York, NY 10016, Attn:  René S. Roupinian, and (2) the Trustee, c/o Bilzin Sumberg Baena Price & Axelrod LLP, 200 S. Biscayne Blvd., Suite 2500, Miami, Florida, Attn:  Wendy V. Polit.

## OPT-OUTS

If you DO NOT WISH to participate in this Action, and wish to be EXCLUDED from the Class and thereby reserve your rights under the WARN Act and NOT SHARE IN ANY RECOVERY in the Action, CHECK THE BOX IN THE FORM BELOW, AND SIGN AND MAIL that form by certified mail, return receipt requested, to Outten & Golden LLP, 3 Park Avenue, 29th Floor, New York, New York 10016, Attn: René S. Roupinian. The form must be **RECEIVED** no later than \_\_\_\_\_,\_\_, 2009. All requests for exclusion received after that date will not be effective, and any person who sends a late request will be a member of the Settlement Class in the Action and will be bound in the same way and to the same extent as all other Settlement Class Members.

The Court has taken no position regarding the merits of Plaintiff's claims or First NLC's defenses. Please do not call or contact the Court for information.

If you wish information or assistance, please contact Jenny Hoxha of Outten & Golden, LLP at (212) 245-1000

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

### JOHNSON, ET AL. v. FIRST NLC FINANCIAL SERVICES, LLC, ET AL.

OPT-OUT FORM

**If you <u>DO NOT</u> WISH to participate in this Action you must return this form, so that it is <u>RECEIVED</u> no later than _____, __2009, to Settlement Class Counsel at the following address:**

Outten & Golden LLP
Attn:  René S. Roupinian
3 Park Ave, 29th Floor
New York, NY 10016

I, the undersigned, have read the foregoing Notice of Class Action and understand its contents.

☐      I do not want to participate in the above Class Action and do not wish to be bound by the outcome of the Class Action or receive any benefits of that action.

_____          _____
Signature                                                          Address


_____          _____
Name (printed or typed)                                Telephone


_____
Date